**In re COCONUT GROVE BAYSHORE, INC., Debtor.**

**Bankruptcy No. 82–01866–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Aug. 5, 1983.

Fred Stanton Smith, trustee.

Francis Carter, Miami, Fla., for trustee.

Scott Baena, Miami, Fla., for debtor.

Paul Huck, Miami, Fla., for Girard Bank.

## ORDER ON APPLICATION FOR INTERIM COMPENSATION

THOMAS C. BRITTON, Bankruptcy Judge.

A hearing was held on July 18 upon three applications for interim compensation in this chapter 11 case which has been pending ten months. The trustee (C.P. No. 78), his attorney (C.P. No. 80) and the debtor's attorney (C.P. No. 79) have applied for a total of $177,365 for services to date by the trustee, to April 1 for the trustee's attorney

(five and one-half months) and to April 14 for the debtor's attorney (seven and one-half months).

The application for the debtor's attorney seeks $52,024. This application includes $50,475 for 446 hours time expended by what appears to be six attorneys and includes 86 hours of para-legal time at an average charge of $113 an hour.

The debtor's attorneys spent a great deal of time on an emergency basis to settle a $1.1 million action pending against the debtor which clouded the debtor's title to its 25 unit luxury condominium structure, which had been completed, but remained unsold. The action asserted an equitable lien based on a constructive trust. It was removed to this court and settled by the debtor's attorney on the eve of trial for $600,000 and an agreement that the claim for that sum would be subordinated to all other claims. This was a significant and essential achievement if the debtor is to preserve any equity in this case.

The debtor's attorney also settled, with major assistance from the trustee's attorney and the trustee, a pending mortgage foreclosure action. The resolution of this problem was equally essential, but considerably easier.

Finally, the debtor's attorney, again with the important assistance of the trustee and his attorney, obtained permission to sell the completed units free and clear, all liens to attach to the proceeds. This, too, was an essential achievement to prevent a completely destructive deadlock. It was achieved promptly and professionally by counsel. Under the bankruptcy code and in view of the economic realities present here, this was a relatively simple achievement.

I consider the total time expended to date somewhat excessive and the average hourly charge is generous in view of the apparently limited expertise of at least some of the attorneys assigned to this matter. Perhaps the final application will support a different conclusion.

The application seeks an interim award for the total billings made to date in reliance upon a 1981 decision of a bankruptcy court in the Western District of Washington. This is, I believe, the only court to have held that the present Code has altered the universally accepted practice in all courts under the former Act and followed, apparently, by all other courts under the Code of allowing only such interim compensation as would almost certainly be allowed the applicant under all possible contingencies at the close of the case. It is worth noting that the Washington court subsequently suspended the payment of the interim compensation allowed in the order these applicants rely upon. I disagree with our colleague in Washington. I share the view asserted by the SEC. See Annual Report of Corporate Reorganization under Bankruptcy Laws (1982), page 30, note 59. The Code has not altered the pre-Code rule. In view of the present uncertainty and contingencies, an interim allowance of $25,000 is appropriate for the services to April 15, and the trustee is authorized and directed to make such payments when and as funds are available for this purpose. I note that the debtor's counsel were advanced $50,000 by a third party and that they propose to reimburse that party with all sums received up to that amount. There have been no previous applications or allowances.

In addition, the debtor's attorney seeks $1,549 reimbursement for expenses. (C.P. No. 79, page 9). Interim reimbursement is authorized in the amount of $915.67. The balance is for fares, taxis and parking, unexplained "travel expenses", "telephone", "postage" and "process service". The last item for $130, appears excessive if not completely unnecessary in view of the availability of process by first class mail under B.R. 704. The remaining items, I believe, are normal overhead expenses of a law firm, adequately covered by the billing rates employed by this firm. The trustee is authorized and directed to reimburse these expenses.

The trustee seeks an interim allowance of $38,310. The maximum permissible fee under § 326(a) at this point would be $34,589. Applying the principle referred to above, an

interim fee of $26,000 is allowed and its payment is authorized subject to the availability of funds, considering the demands on those funds for the preservation of the estate's property.

The trustee's attorney has applied for $82,921 for 672 hours of legal services provided by 7 attorneys and 53 hours of paralegal time. This extraordinary expenditure of time in representation of the trustee over the span of five and one-half months was not unreasonable in this case. The trustee and his attorney have been obliged to close the sale of 9 condominium units for $3.3 million, which required that the title be cleared, which in turn required that the developer's documentation under State regulations for condominium sales be completed and that the litigation which clouded the title of this property be resolved. As has been noted, this was a substantial challenge for the trustee and his attorney as well as the debtor's attorney. Each played a significant role in resolving these problems and did so without significant duplication of effort. Applying, once again, the principle discussed above, $50,000 is authorized as an interim allowance to the trustee's attorney, subject to the condition noted above.

The trustee's attorney has also applied for reimbursement of expenses in the amount of $4,109. Reimbursement is authorized in the amount of $1,962. The balance is for machine copies, postage, Lexis research, secretarial overtime and word processing charges, each of which I consider to be expenses normally included in the overhead for attorneys and not, therefore, separately reimbursable as expenses of the law firm. See 13 A *Collier on Bankruptcy* (14th ed.) ¶ 10–215.07, notes 53 and 54.

In allowing the foregoing fees, this court has considered each of the factors that govern the reasonableness of fees as set forth in *Matter of First Colonial Corp. of America,* 5th Cir.1977, 544 F.2d 1291. Specific findings and a statement of the facts and considerations supporting each of these conclusions have been omitted in the interest of brevity, but will be prepared and filed at the request of any party if received by this court within 10 days after the entry of this order.