## In re COASTAL DRY DOCK & REPAIR CORP., Debtor.

**Bankruptcy No. 186–61039–353.**

United States Bankruptcy Court, E.D. New York.

July 7, 1986.

Herman Bursky, Shea & Gould, New York City, for Coastal Dry Dock & Repair Corp., debtor and debtor-in-possession.

Charles E. Simpson, Simpson & Levitsky, Brooklyn, N.Y. for Brooklyn Navy Yard Development Corp.

Babette Tenzer, Moses & Singer, Richard Toder, Zalkin, Rodin & Goodman, New York City, for Chemical Bank.

Gretta G. Seidel, Summit, Rovins & Feldesman, New York City, for Standard Chartered Bank.

Harvey Goldstein, Finkel, Goldstein & Berzow, New York City, for Creditors' Committee.

Judy G. Zuckerman, Weil, Gotshal & Manges, New York City, for City of New York.

Philip M. Hitch, Washington, D.C., for Comptroller of the Navy.

## DECISION

JEROME FELLER, Bankruptcy Judge:

Before the Court is an application of the Brooklyn Navy Yard Development Corporation ("BNYDC"), dated June 9, 1986, seeking various forms of relief arising out of the existing landlord-tenant relationship between it and Coastal Dry Dock & Repair Corp. ("Coastal" or "Debtor"). Pursuant to order to show cause dated June 11, 1986, the matter came on for a hearing on June 17, 1986. On the latter date, Coastal filed a response and cross-motion, under 11 U.S.C. § 365(d)(4), to extend the time for the Debtor to assume or reject its lease up to and including September 30, 1986. After hearing oral argument, the hearing was adjourned to June 26, 1986 and the parties were directed to meet and in good faith negotiate in an attempt to resolve amicably the issues raised by the application of BNYDC. In addition, Coastal was ordered to pay BNYDC $141,989.68–$91,989.68 on June 18, 1986 and $50,000 on June 20, 1986.

On June 26, 1986, over the opposition of BNYDC, the Court granted an oral application made by Coastal under 11 U.S.C. § 365(d)(3) extending, within the limitation contained in that provision, the time for the Debtor's performance under its lease with BNYDC. Coastal, however, was directed to pay BNYDC the further sum of $100,000–$50,000 on June 27, 1986 and $50,000 on July 7, 1986. These sums, as well as the aforementioned $141,989.68, represented partial payments to BNYDC of the rent and utility charges due and owing post-petition.

The Court also vacated, without prejudice, an ex parte stay order, dated May 16, 1986, obtained by Coastal, which order enjoined BNYDC, Consolidated Edison Company and others from, among other things, disturbing electrical service and any other utility service furnished the Debtor. In that connection, the Court pointed out that i) in retrospect, the underlying application seeking the stay order contained insufficient information to determine the propriety of the injunction; and ii) in any event, the stay request was defective in that Coastal failed to comply with the procedural requirements of Bankruptcy Rule 7001(7).

Furthermore, on June 26, 1986, the Court denied, with prejudice, the request of BNYDC to enjoin Consolidated Edison Company and others from, among other things, disturbing electrical service and other utility services furnished BNYDC. In that regard, the Court observed that BNYDC is not a Chapter 11 debtor and stated that it "cannot savor the sweet of Chapter 11 without having to taste the sour."

The June 26 hearing on BNYDC's application was further adjourned to July 10,

1986 and the parties were again urged by the Court to meet and in good faith negotiate in an attempt to resolve amicably the issues not determined by the Court. These efforts, whatever they may have been, proved utterly fruitless. On July 3, 1986, upon consent of Coastal and BNYDC, the Court cancelled the July 10 hearing, delivered its opinion in respect of the security deposit from the bench (see, *infra*, pp. 883–884), and took the other matters under advisement.

■ Unresolved by the Court on June 26, 1986 were the following matters: i) BNYDC's request for an order directing the Debtor to immediately determine whether it elects to assume its lease with BNYDC and, in the interim, in accordance with 11 U.S.C. § 365(d)(3), timely perform its obligations under that lease; and ii) BNYDC's request for an order directing the Debtor to forthwith provide BNYDC, pursuant to 11 U.S.C. § 366, with adequate assurance of payment of electricity services to Consolidated Edison Company in the form of an immediate cash deposit of no less than $700,000.[1] In addition, the Debtor's cross-motion under 11 U.S.C. § 365(d)(4) must be addressed.

I. *Background*

On May 16, 1986, Coastal filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. In accordance with 11 U.S.C. § 1107, Coastal, as a Debtor-In-Possession, has the powers and duties of a Trustee appointed pursuant to 11 U.S.C. § 1104 and, pursuant to 11 U.S.C. § 1108, is authorized to continue in the operation of its business and the management of its properties.

Coastal is a substantial company which is privately owned and whose business opera-

tions consist primarily of the repair, refurbishing and conversion of United States Naval, Coast Guard, Military Sealift Command and Commercial vessels. In its Chapter 11 petition, Coastal reported assets and liabilities of $36,520,000 and $31,963,000, respectively, as of March 31, 1986.

BNYDC, a non-profit local development corporation, runs or manages the Brooklyn Navy Yard under lease with the City of New York. BNYDC, in turn, sublets portions of the Brooklyn Navy Yard to various tenants. Coastal is BNYDC's largest and most important tenant. Coastal conducts its business operations at the Brooklyn Navy Yard from premises leased from BNYDC pursuant to a lease agreement. The Coastal lease covers approximately 60% of the available Brooklyn Navy Yard space. Pursuant to the lease, Coastal is obligated to pay BNYDC for utility consumption and a base monthly rental fee of around $204,000. BNYDC collects from Coastal the charge for utility consumption, and, in turn, pays the actual provider of the utility services. Coastal has not fully performed its pecuniary obligations under the lease since the filing of the Chapter 11 petition.

BNYDC also claims that Coastal has been delinquent in the payment of rent and utilities in the sum of more than $3 million prior to the inception of Coastal's Chapter 11 case and that, as a result, it too is tottering on the brink of financial collapse. Coastal vigorously contests the alleged prepetition sums owing BNYDC and asserts substantial claims against BNYDC in its own right. It is in this sad state of bitter dispute and recrimination that these Chapter 11 proceedings were commenced and are continuing to the obvious detriment of Coastal's reorganization efforts and both the Debtor's and BNYDC's mutual desire to survive.[2]

---

1. BNYC also seeks the appointment of a trustee to take control of the Debtor's assets and to manage and operate the Debtor's business, subject to the orders of this Court. Apart from BNYDC's expressed dissatisfaction with the Debtor's present management, BNYDC has

presented no evidence in support of its request for a trustee. Accordingly, this request is denied, without prejudice.

2. It may be noted that the Brooklyn Navy Yard is the City of New York's only major shipyard. This famed facility, at its peak during World

## II. *Extension Of Time To Assume Or Reject Lease And Performance Thereunder*

■ The Debtor has cross-moved pursuant to 11 U.S.C. § 365(d)(4) to extend the time to assume or reject its lease with BNYDC up to and including September 30, 1986. Although BNYDC seeks an order directing the Debtor to immediately determine whether to assume or reject the lease, BNYDC apparently concedes that realistically it is premature to make such a determination at this time.[3] We agree. Considering the size and complexity of this Chapter 11 case, and the centrality of the subject lease to the destiny of these reorganization proceedings, a request for a 75-day extension to assume or reject can hardly be deemed unreasonable. Accordingly, the Debtor's cross-motion is granted.

■ The crucial remaining issue that needs resolution is establishing Coastal's rental obligations under the lease from the inception of the Chapter 11 case until the lease is assumed or rejected. As indicated above, the base rental under the lease, exclusive of utilities, is approximately $204,000 per month. Coastal, however, contends that because it is not using all of its leasehold at the Brooklyn Navy Yard and is using, in fact, only about 10% of the demised premises, BNYDC is entitled to only some $20,000 in base monthly rental. BNYDC, of course, asserts entitlement to the full base monthly rental. Coastal also argues that it is being overcharged for electricity and BNYDC counters by saying that it does not "profit" in supplying Coastal with electricity.

We turn now to the applicable statutory provisions governing performance of lease obligations prior to assumption or rejection, i.e., 11 U.S.C. § 365(d)(3). Like 11 U.S.C. § 365(d)(4), Section 365(d)(3) was adopted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, July 10, 1984, 98 Stat 333 ("1984 Amendments"). In relevant part, Section 365(d)(3) reads as follows:

> "The trustee shall timely perform all the obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." [4]

Prior to enactment of the 1984 Amendments and under the former Bankruptcy Act, there was venerable judicial authority for the proposition that trustees or debtors-in-possession, while determining whether to assume or reject unexpired leases of premises and occupying only a part of the demised premises, were not bound by the terms of the lease and liable only for use and occupation of the portion physically occupied. *E.g., In re United Cigar Stores Co.*, 69 F.2d 513, 515 (2d Cir.) (Augustus N. Hand, J.), *cert. denied, sub nom., Reisenwebers v. Irving Trust Co.*, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665 (1934); *American A & B Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124–25 (2d Cir. 1960). That is no longer the law since enactment of the 1984 Amendments.

In unmistakable terms, Section 365(d)(3), with certain exceptions not relevant here, requires trustees or debtors-in-possession to timely perform the debtor's lease obligations, including payment of all rents reserved under the lease until the lease is assumed or rejected. *In re Longua*, 58

War II, is reported to have employed approximately 70,000 persons and to have turned out a new warship every 24 days. Although hardly expected to operate at anywhere near such levels today, the Brooklyn Navy Yard still impacts significantly on the local economy and provides employment for substantial numbers of people. Indeed, Coastal is probably Brooklyn's biggest industrial employer.

3. Paragraph 21 of BNYDC's application states that, "[w]hile admittedly it is too early in this Chapter 11 case for Coastal to determine whether it will assume or reject the Lease, this is a situation that must be attended to in the very near future."

4. The reference to the duty of the "trustee" specifically applies to a debtor-in-possession by virtue of 11 U.S.C. § 1107(a). The "order for relief" is the date on which the debtor files a petition for relief, i.e., in this case a Chapter 11 petition. 11 U.S.C. §§ 301 and 103(a).

B.R. 503 (Bkrtcy.W.D.Wis.1986); *In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bkrtcy.D.Minn. 1986); *Feld v. S & F Concession, Inc. (In re S & F Concession, Inc.)*, 55 B.R. 689 (Bkrtcy.E.D.Pa.1985). This obligation is made expressly independent of the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1) and constitutes an administrative expense payable without notice and a hearing. *In re Longua, supra,* 58 B.R. at 504–05.

The command of Section 365(d)(3) is clear and unambiguous. It means exactly what it says. We decline the Debtor's invitation to disfigure with the patina of judge made law the clean surface of a statute. The Debtor may not like what Section 365(d)(3) says, but neither the Debtor nor this Court are empowered to alter its plain meaning. Accordingly, the Debtor is obligated to pay the base monthly rental reserved under the BNYDC lease for the post-petition period until such lease is assumed or rejected. Insofar as utilities, it would seem that the Debtor is obligated to pay post-petition charges to BNYDC for Coastal's actual consumption as recorded upon properly maintained and calibrated meters at customary rates. To hold otherwise would clearly be at odds with the underlying equitable principles governing bankruptcy administration. *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

### III. *Security Deposit*

■ BNYDC seeks a security deposit under 11 U.S.C. § 366 to provide adequate assurance for payment of utility services provided by Consolidated Edison Company. This case does not fall within the explicit language of Section 366 in that BNYDC, the utility supplier, is postured as a middleman or conduit between the utility provider and the ultimate user of the utility service, the Debtor. Nonetheless, we think that, to the extent possible, this situation should be governed by the underlying principles enunciated in Section 366. As the legislative history points out:

"This section [366] is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." H.R.Rep. 595, 95th Cong., 1st Sess. 350 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5846, 6306.

Clearly BNYDC occupies "a special position with respect to the debtor" in its role as Coastal's utility supplier.

In any event, the Debtor does not dispute that a security deposit to provide adequate assurance of payment for electricity provided by Consolidated Edison Company is warranted. Indeed, the Debtor in its response to BNYDC's application, in effect, requests the Court to fix the security deposit. The disagreement pertains only to amount. The Debtor suggests that a deposit in an amount equal to the estimated utility usage over the next two-week period is adequate, which sum the Debtor estimates to be $80,000. On the other hand, BNYDC demands a deposit of no less than $700,000 based upon a letter to BNYDC from Consolidated Edison Company, dated June 9, 1986, annexed to BNYDC's application. The request of Consolidated Edison Company of BNYDC, however, does not indicate the basis for that number and is apparently predicated on electric power consumption supplied to BNYDC for the entire Brooklyn Navy Yard. No evidence has been presented by either of the two parties regarding Coastal's future consumption of electric power.

■ The amount of security deposit should bear a reasonable relationship to expected or anticipated utility consumption by a debtor. Here, we believe that a deposit in an amount equal to Coastal's estimated electric power consumption over the ensuing one month, subject to future adjustment if changed circumstances so warrant, provides BNYDC with adequate assurance of payment within the intent and

meaning of 11 U.S.C. § 366(b). Such estimated usage over the next month should not be very difficult for reasonable persons to ascertain with some degree of accuracy. If Coastal and BNYDC are unable to reach an agreement even on this matter, an evidentiary hearing should be requested on the issue.

SETTLE ORDER ON NOTICE IN ACCORDANCE WITH THE FOREGOING.