## In re RARE COIN GALLERIES OF AMERICA, INC., Debtor.

Bankruptcy No. 86–11475–JNG(C).

United States District Court,
D. Massachusetts.

April 14, 1987.

Gary W. Cruickshank, Marullo & Barnes, Boston, Mass., for debtor.

Stephen F. Gordon, Gordon & Wise, Deborah Thaxter, Boston, Mass., for creditors committee.

John J. Regan, trustee.

## MEMORANDUM

CAFFREY, Senior District Judge.

This is a Chapter 11 bankruptcy proceeding. The matter is now before the Court in an adversary proceeding involving the landlord Rana Associates' ("Rana") motion requesting immediate payment of administrative expense. Rana is the lessor of the premises which the debtor Rare Coin Galleries of America, Inc., used for its business. The trustee of the debtor has stipulated with Rana as to essential facts. This Chapter 11 case commenced on October 14, 1986. Because the trustee neither assumed nor rejected the lease on or before December 13, 1986, the lease was deemed rejected on that date in accordance with 11 U.S.C. § 365(d)(4).[1] During this 60 day post-petition period, the trustee did not pay the rent obligation required under the lease. The per diem rent under the lease is $204.34.

The parties opposing Rana's motion are the trustee, the South Shore Bank ("Bank"), and the Commissioner of the Massachusetts Department of Revenue ("Commissioner"). The Bank claims to be a secured creditor of the debtor. The Commissioner claims perfected tax liens against the debtor totalling $327,362.13. The Bank and the Commissioner oppose the immediate payment of Rana's claim for the reasons set out by the trustee in paragraph 4 of the stipulation. Paragraph 4 states, in part:

Although the Trustee agrees that Rana is entitled to be paid an administrative claim of $15,116.91, the Trustee is concerned that the payment of this administrative expense may be inappropriate if insufficient funds will be generated in this case to pay in full tax liens which

---

1. Section 365(d)(4) provides:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60

days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

may be entitled to priority over administrative claimants or because the South Shore Bank asserts a claim to a lien or a security interest in the proceeds of assets disposed, after court approval, out of the ordinary course of business.

The opposing parties rely on two case which stand for the proposition that the timing of the payment of administrative claims is within the discretion of the judge, and that where the debtor has insufficient funds to pay all administrative expenses in full, the administrative claimants should not be given a greater than pro-rata share in the available funds. *In re American Resources Management Corp.*, 51 B.R. 713, 719–21 (Bankr.D.Utah 1985); *In re Standard Furniture Co.*, 3 B.R. 527, 530, 532 (Bankr.S.D.Cal.1980). The Bank and Commissioner correctly characterize the rent which accured over the 60 day post-petition period as an administrative claim. Furthermore, the trustee's estimation of the debtor's assets indicate that payment of Rana's full claim now would be greater than its pro-rata share during the administration of the case and would result in insufficient funds to fully pay the Bank's secured claim and the Commissioner's tax lien. As Rana correctly points out, however, the post-petition rent due under a non-residential lease is not the same as all other administrative claims.

The trustee's obligation with regard to this rent is governed by 11 U.S.C. § 365(d)(3), which states in part as follows:

The trustee shall timely perform all obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of the title.

■ Section 365(d)(3) clearly requires the continued performance by the trustee of the full rent obligations under the lease until the decision to assume or reject the lease is made. *In re DeSantis*, 66 B.R. 998, 1004 (Bankr.E.D.Pa.1986); *In re Chandel Enterprises, Inc.*, 64 B.R. 607,

610 (Bankr.C.D.Cal.1986); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 882–83 (Bankr.E.D.N.Y.1986); *Matter of Longua*, 58 B.R. 503, 504–05 (Bankr.W.D. Wis.1986); *In re S & F Concession, Inc.*, 55 B.R. 689, 690–91 (Bankr.E.D.Pa.1985). *See also In re PCH Associates*, 804 F.2d 193, 199 (2d Cir.1986). Thus, the command of § 365(d)(3) that the trustee shall "timely" perform the rent obligation means that the trustee must pay the rent as it comes due.[2] Section 365(d)(3) thus gives a special administrative claim priority to post-petition rent due under a non-residential lease. As the bankruptcy court in *Coastal Dry Dock*, 62 B.R. at 883, correctly explained

This obligation is made expressly independent of the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1) and constitutes an administrative expense payable without notice and hearing.

*See also Matter of Longua*, 58 B.R. at 505. The two cases relied upon by the opposing parties are not to the contrary; instead, they are inapposite. *Standard Furniture, supra,* was decided in 1980, four years prior to the enactment of § 365(d)(3). *American Resources Management, supra,* involves professional fees for services to the creditor's committee, and hence has little bearing on claims for rent due under non-residential leases.

Accordingly, the trustee should immediately pay Rana the amount of rent due during the sixty-day post-petition period, i.e., for the period October 14, 1986 to December 13, 1986. Apparently the trustee acknowledges in the stipulation Rana's claim that an additional $200.00 is due under the lease as an expense incurred by Rana in removing trash from the premises. Neither the Bank nor the Commissioner objected at oral argument to that characterization. This two hundred dollar amount therefore should also be immediately paid to Rana.

Rana requests additional immediate payments. The facts germane to these additional payments are as follows. The lease

---

**2.** The court may extend, for cause, the time for performance under the lease during the sixty-day period, pursuant to § 365(d)(3), (4), but the time for performance may not be extended beyond the sixty-day period. 11 U.S.C. § 365(d)(3). *See also* 1 W. Norton, *Bankruptcy Law and Practice,* § 23.11.30.

was deemed rejected on December 13, 1986 by virtue of 11 U.S.C. § 365(d)(4). That section requires that upon automatic rejection of the lease at the end of the sixty-day period, "the trustee shall immediately surrender such non-residential property to the lessor." The trustee continued to occupy the premises, however. According to the affidavit of Mahmoud Ketabi, a general partner in Rana, the trustee returned one set of keys to the premises on December 24, 1986. Ketabi further states that he was informed that the trustee would vacate the premises that day except for leaving two safes and a security system in place. On December 29, 1986, the trustee's agent delivered a second set of keys to the premises to Ketabi.

Rana argues that the time of the trustee's effective surrender of the premises is December 29, 1986, and that the trustee should pay to Rana the per diem rent rate as established in the lease for the period December 14, 1986 to December 29, 1986. In the stipulation, the trustee agrees that Rana has an administrative claim against the debtor's estate for rent at the per diem rate for the period December 14, 1986 to December 24, 1986. In addition, Rana stipulates to waiving any right to an administrative claim for the period of December 25, 1986 to December 29, 1986. For purposes of the present motion, Rana is bound by its stipulation. Accordingly this Court will consider only Rana's claim for rent for the period December 14, 1986 to December 24, 1986.[3]

■ Sections 365(d)(3) and (4) are silent as to the trustee's obligations to the landlord once the lease has been rejected. Thus, immediate payment of rent for the holdover period of December 14, 1986 to December 24, 1986 is not necessarily required. In *Chandel Enterprises*, 64 B.R. 607, the bankruptcy court stated that in this context, "once the lease is deemed rejected, the lease rate no longer controls; instead, the debtor is only required to pay

the reasonable rental value of the premises." *Id.* at 610. In the District of Massachusetts, the bankruptcy courts have applied a presumption that the reasonable value for use of the premises is the rent under the lease unless an opposing party produces evidence that the lease rate is unreasonable. *See In re Energy Resources Co., Inc.*, 47 B.R. 337, 339 (Bankr. D.Mass.1985); *In re GHR Energy Corp.*, 41 B.R. 668, 672 (Bankr.D.Mass.1984). There has been no showing that the lease rate is unreasonable. Consequently, Rana has a proper administrative claim for rent at the per diem lease rate for the holdover period of December 14, 1986 to December 24, 1986.

Like the amount of holdover rent due, the timing of payment of this holdover rent claim is not controlled by § 365(d)(3). The statute on its face does not compel immediate payment. In general, the timing of the payment of ordinary administrative claims is in the discretion of the Court. *See e.g., American Resources Management*, 51 B.R. 713, 721. In this case, however, it is appropriate to require the trustee to immediately pay Rana the holdover rent claim. Section 365(d)(4) required the trustee to surrender the premises on December 13, 1986. The trustee's failure to comply with this mandate should not result in a rent obligation less burdensome than when the trustee was properly on the premises during the sixty-day post-petition period. *Accord Matter of Longua*, 58 B.R. at 506 (holdover period rent also constitutes "a priority administrative expense"). The rent for the holdover period from December 14, 1986 to December 24, 1986 therefore should be paid immediately.

Order accordingly.

## ORDER

In accordance with memorandum filed this date, it is ORDERED:

---

3. Similarly, Rana's stipulation forecloses other of its claims. Rana has moved for immediate payment of interest which has accrued on the unpaid rent, and for reasonable attorney's fees in the collection of the rent. In paragraphs 3(b)

and (3)(c) of the Stipulation, however, Rana waived its right to claim these as administrative claims. These matters are thus outside the scope of the present motion.

1. Rana's motion for immediate payment of rent due under the lease for the period October 14, 1986 to December 13, 1986 is allowed. Payment shall be at the per diem rental rate established in the lease.

2. Rana's motion for immediate payment of $200.00 as a clean up cost due under the lease is allowed.

3. Rana's motion for immediate payment for the trustee's use and occupancy of Rana's premises, for the period December 14, 1986 to December 24, 1986, is allowed. Payment shall be at the per diem rental rate established in the lease.

4. Rana's motion for immediate payment of interest which has accrued on unpaid rent, and for attorney's fees incurred in the collection of rent, is denied.

5. Rana's motion for immediate payment for the trustee's use and occupancy of Rana's premises, for the period December 25, 1986 to December 29, 1986, is denied.

6. The trustee shall make the payments specified in this order within 10 days.