**In re GRANADA, INC., Debtor.**

**Bankruptcy No. 87C–00693.**

United States Bankruptcy Court, D. Utah.

June 24, 1988.

**370**

Gary E. Jubber, Fabian & Clendenin, Salt Lake City, Utah, for Trustee.

Gerald H. Suniville, VanCott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for McCune Associates.

1. The rental agreement called for payments of $5,000.00 per month for the use of this space.

2. The trustee filed an affidavit with the Court on September 23, 1987 reciting that "[t]here are insufficient *liquid* assets of the estate to pay all administrative claims accrued to date." Affida-

## MEMORANDUM OPINION

GLEN E. CLARK, Chief Judge.

On February 13, 1987, Granada, Inc. ("Granada") filed its Chapter 11 petition for relief. As of that date, Granada occupied offices on the first and second floors of the McCune Mansion ("Mansion") located at 200 North Main Street, Salt Lake City, Utah.[1] Granada vacated a portion of the first and second floors of the Mansion on or about April 5, 1987. By May 1, 1987, Granada had vacated all first and second floor offices and moved to a portion of the Mansion's basement. A Chapter 11 trustee was appointed in this case on June 22, 1987. On September 2, 1987, McCune Associates ("McCune") filed a motion seeking an order directing the trustee to immediately pay all postpetition rent due under the lease. The nonresidential lease had been rejected by operation of law on April 15, 1987 pursuant to 11 U.S.C. § 365(d)(4). With the exception of two payments of $800.00 for rental of the basement for the months of May and June 1987, no other lease payments were made to McCune subsequent to or during the 60-day period provided in Section 365(d)(4) for assumption or rejection of the lease.

McCune seeks to have the trustee pay a total of $10,233.34. Of this amount, $7,833.34 represents rent from February 13 through April 30, 1987. The remaining balance of $2,400.00 is rent for July, August and September 1987 at a rate of $800.00 per month. The trustee argued at the hearing on this matter that while there was approximately $17,000.00 in the trustee's bank account, accrued administrative claims exceeded that amount and it could not be determined whether there would be sufficient funds to pay all administrative claims against the Granada estate.[2] Following the hearing on this motion, the Court took the matter under advisement to resolve the issue whether accrued postpeti-

vit of Peter W. Billings, Jr. in Opposition to McCune Associates Request for Payment of Administrative Expense (emphasis added). The affidavit also estimates and itemizes accrued professional fees entitled to administrative expense treatment in the amount of $151,220.50.

tion lease obligations under a nonresidential real property lease must be paid immediately, even when the trustee is no longer in possession of the premises [3] and there are insufficient estate funds with which to pay all accrued administrative expenses in full. Stated otherwise, the Court must decide whether an administrative rent claim arising under § 365(d)(3) is entitled to superpriority over other § 507(a)(1) administrative expense claims.

## DISCUSSION

■ Claims for administrative expenses must be allowed under the standards contained in 11 U.S.C. § 503, and are given a first priority status pursuant to 11 U.S.C. § 507(a)(1). Section 503(b) specifies that certain claims shall be allowed as administrative expenses after notice and a hearing. Section 503(a), in turn, provides that an administrative expense claimant may file a request for payment. However, in the case of lease obligations under nonresidential real property leases during the 60-day period immediately following the entry of an order for relief, § 365(d)(3) provides for an exception to this procedure:

> The trustee shall timely perform all obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title.*

(emphasis supplied). Stated otherwise, the rental that comes due during this 60-day period is an allowable administrative expense without the necessity of notice and a hearing as ordinarily required by § 503(b)(1), and is to be timely paid without requiring the claimant to file a payment request. *See, In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 972 (Bkrtcy.E.D.Pa.1987); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879, 883 (Bkrtcy.E.D.N.Y.1986); *Matter of Longua,* 58 B.R. 503, 505 (Bkrtcy.W.D.Wis.1986); *Matter of the Barrister of Delaware, Ltd.,* 49 B.R. 446, 447 (Bkrtcy.D.Del.1985) ("Sec-

tion 503(b)(1) provides that administrative expenses may be allowed after notice and a hearing. Thus, any obligation covered by the first sentence of § 365(d)(3) is allowed as an administrative expense without the necessity for notice and a hearing ...").

Section 365(d)(3) and (d)(4) were added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98-353, 98 Stat. 333 (1984) ("BAFJA") to "realign the burdens incident to assumption and rejection of unexpired leases of nonresidential real property." *In re By-Rite Distributing, Inc.,* 47 B.R. 660, 670 (Bkrtcy.D.Utah 1985), *rev'd on other grounds,* 55 B.R. 740 (D.Utah 1985). Congress clearly believed that it was unfair to the lessor of nonresidential real property for the trustee not to make lease payments while deciding whether to assume or reject the lease:

> In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.
>
> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S8994-95 (daily ed. June 29, 1984) (remarks of Senator Hatch), quoted in *In re By-Rite Dist., Inc.,* 47 B.R. at 664-65.

Section 365(d)(3) requires the continued performance by the trustee of the full rent obligations under the lease until the decision to assume or reject the lease is made. While Section 365 permits a trustee to as-

---

**3.** The premises were to be vacated by September 30, 1987 pursuant to this Court's order. There is no evidence that the premises were not vacated by that date.

sume or reject residential and personal property leases up until the date of confirmation, a lessee of nonresidential real property must act within 60 days. 11 U.S.C. § 365(d)(4). The language of Section 365(d)(3), that the trustee shall "timely" perform, clearly contemplates that the trustee will pay the rent as it comes due.[4] Neither party in this action disputes that conclusion. It is also undisputed that the trustee's obligation to pay full rent due during the 60–day period for assumption or rejection constitutes an administrative expense payable without notice or hearing.

■ In the normal case, the trustee remains in possession of the property and it is clear that the landlord is entitled to immediate payment of the rent reserved in the lease. However, in this case, the debtor did not make the lease payments during the 60–day period, the trustee vacated the premises, and the trustee now asserts that immediate payment of the rent claim would be an improper superpriority since there are not sufficient liquid assets presently in the estate to pay all accrued administrative expenses. While several courts have ordered the immediate payment of accrued nonresidential rent by the trustee, *see e.g.*, *In re M.H.I., Inc.*, 61 B.R. 69, 71 (Bkrtcy.D. Md.1986); *In re Galvan*, 57 B.R. 732, 734 (Bkrtcy.S.D.Cal.1986); *In re T.F.P. Resources, Inc.*, 56 B.R. 112, 117 (Bkrtcy.S.D. N.Y.1985); *In re S & F Concession, Inc.*, 55 B.R. 689, 691 (Bkrtcy.E.D.Pa.1985); *In re Ted Liu's Szechuan Garden, Inc.*, 55 B.R. 8, 12 (Bkrtcy.D.C.1985); *In the matter of The Barrister of Delaware, Ltd.*, 49 B.R. 446, 447 (Bkrtcy.D.Del.1985), this Court is aware of only two cases which have specifically addressed the issue whether, in addition to the automatic allowance of these lease payments as administrative expenses, § 365(d)(3) creates a superpriority status for such payments.

In *In re Dieckhaus Stationers of King of Prussia, Inc., supra,* the court found no justification for a superpriority within either Section 365(d)(3) itself, or in the legislative history to the 1984 BAFJA amendments. *Dieckhaus* involved a motion filed by a Chapter 11 debtor to convert to Chapter 7. The debtor's former landlord objected to the conversion and filed a motion to compel the immediate payment of postpetition rent due under a nonresidential lease. The *Dieckhaus* court concluded that while the timing of payment of administrative expense claims is clearly within the discretion of the court, "a nonresidential lessor's administrative expense claim arising under section 365(d)(3) should be paid immediately unless the trustee establishes good cause for withholding the payment." *Dieckhaus*, 73 B.R. at 972–73 (citations omitted). Because the debtor in possession did not present any evidence that would justify the denial of the lessor's request for payment, the court did not address what would constitute "good cause" for such a denial. *Id.* at 973 n. 1. The court made it very clear that the immediate payment of the lessor's claim did not constitute a superpriority,[5] and that such payment was subject to the trustee's right to seek recovery of all or part of the payment in the event that there were insufficient funds to pay all other administrative expense claimants in full. *Id.* at 973.

In *In re Rare Coin Galleries of America, Inc.*, 72 B.R. 415 (D.Mass.1987), the court recognized a superpriority for unpaid Section 365(d)(3) lease payments. The

---

**4.** As stated in § 365(d)(3), the "court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period."

By the express language of the statute, § 365(d)(3) only applies "until [a nonresidential real property] lease is assumed or rejected." It therefore does not impose the same obligation of timely payment on the trustee once the lease has been deemed rejected pursuant to § 365(d)(4).

**5.** The court recognized that the position of a lessor during the § 365(d)(4) 60–day assumption/rejection period is analogous to that of an involuntary extender of unsecured credit. While there may be some inequity inherent to the lessor's position when it must wait for payment or share pro rata, the court concluded that it was simply "not convinced that Congress intended that every nonresidential lessor be a superpriority creditor." 73 B.R. at 973 n. 2.

Chapter 11 trustee testified that immediate payment of the lessor's administrative rent claim would leave insufficient funds to fully pay other accrued administrative claims. *Id.* at 416. The court properly stated that the language of Section 365(d)(3), that the trustee shall "timely" perform, "means that the trustee must pay the rent as it comes due." *Id.* (footnote omitted.) Then, without further reasoning or analytical support, the court concludes:

> Section 365(d)(3) thus gives a special administrative claim priority to postpetition rent due under a nonresidential lease.

72 B.R. at 416. Having found a superpriority in § 365(d)(3), the court ordered the immediate payment of the administrative rent claim ahead of other accrued administrative claims.

This Court cannot agree with the analysis and conclusion in *Rare Coin*. The Court agrees with the court in *Dieckhaus* that § 365(d)(3) does not itself provide any remedy for nonperformance by a trustee, and that superpriority treatment for unpaid postpetition nonresidential rent is inappropriate.

In the absence of such Congressional direction, this Court agrees that "it would be inappropriate to imply the existence of an automatic superpriority status." *Dieckhaus*, 73 B.R. at 973. In our view, the *Rare Coin* court confuses issues of allowability and payment of administrative expenses pursuant to § 503 (which is specifically addressed by § 365(d)(3)) with the issues of priority and other remedies for nonperformance (as to which § 365(d)(3) is silent).

The Bankruptcy Code's scheme for allowance and priority is very clearly set forth in the statute. As noted herein, § 503 governs the allowance of administrative expenses. That section, however, does not create any priority, neither vis-a-vis nonadministrative claimants nor among various administrative claimants. General priorities are set forth and governed by § 507. That section provides a first priority position for administrative expenses (§ 507(a)), as well as superpriority for certain administrative claims (§ 507(b)). However, § 507 is conspicuously silent as to any priority for claims under § 365(d)(3).

It is clear that, as observed in *In re Tandem Group, Inc.*, 61 B.R. 738, 742 (Bkrtcy.C.D.Cal.1986), "[h]ad Congress intended to create a superpriority for subsection 365(d)(3) it would have done so by express statutory language." In the absence of such Congressional direction, this Court agrees that "it would be inappropriate to imply the existence of an automatic superpriority status." *Dieckhaus*, 73 B.R. at 973. 3 COLLIER ON BANKRUPTCY ¶ 507.02[3] observes that "it must be stressed that priorities are fixed by Congress, and courts are not free to fashion their own rules of super-priorities or sub-priorities within any given priority class. That course belongs to Congress." (footnote omitted.) Section 507 specifies what types of expenses and claims qualify for priority treatment, and the order of their priority. As recognized by COLLIERS, *id.* at ¶ 507.04[1][b] and by this Court in *In re American Resources Management*, 51 B.R. 713, 718 n. 15 (Bkrtcy.D.Utah 1985), as part of this explicit priority scheme within the Code there are at least three superpriorities: (1) Section 507(b) gives a superpriority when adequate protection provided under Section 361 proves to have been inadequate; (2) A superpriority under Section 364(c)(1) may be given to a postpetition lender when the debtor is unable to obtain unsecured credit (Debt incurred under that subsection may be given priority over all administrative expenses and Section 507(b) superpriority expenses); (3) If a Chapter 11 case is converted to Chapter 7, Section 726(b) provides that the Chapter 7 administrative expenses are entitled to a superpriority over the administrative expenses of the Chapter 11.

The concept of judicially granting superpriority status to any one particular administrative claim was fully discussed and rejected by this Court in *In re IML Freight, Inc.*, 52 B.R. 124 (Bkrtcy.D.Utah 1985). In concluding that Section 331 interim fee awards do not have a priority over other Section 507(a)(1) administrative expenses, *IML* resolved several issues that

are pertinent to the question now before the Court: (1) All Section 507(a)(1) administrative expenses incurred under Chapter 11 are on a statutory parity with one another as to *right* to payment, *id.* at 135; (2) Since priorities under the Bankruptcy Code are a creature of statute, courts do not have the power or discretion to create a scale of priorities among administrative claims, and if the estate has insufficient funds to pay all claims in full, claimants must share pro rata among the available assets, *id.* at 137; (3) Although the *right* to payment is equal for all Section 507(a)(1) administrative claims, the *timing* of that payment is in the discretion of the court and the normal rules of distribution may be deviated from in the interest of justice and equity. *Id.* at 138. The Court "does not favor payment of administrative expenses subject to repayment of part of such sums received if there are insufficient funds to pay other claimants." *Id.* at 139.

The Court believes that the principles announced in *IML* and *American Resources Management* are applicable to the issue before it today. As observed in *IML:*

> Priorities under the Bankruptcy Code are a creature of statute. *See* 11 U.S.C. §§ 364(b) and (c), 503(b), 507(a), 546(c), and 726(b); (citations omitted.) Had Congress wanted the bankruptcy courts to fashion their own priorities for distribution of assets, it might have omitted Sections 364, 507, and 726 from the Code. Instead, the Bankruptcy Reform Act of 1978, as each of its more recent predecessors, contained an elaborate scheme of priorities.

52 B.R. at 137.

Although § 365(d)(3) provides for *allowance* of nonresidential lease payments, and

contains a mandate for payment without a specific court order, it is silent as to what *remedies* are available to the lessor when the required payments are not made.[6] Although the Court holds that superpriority status is not available to McCune that does not mean that nonresidential real property lessors are left without an effective remedy. Failure to comply with the demands of § 365(d)(3) has been recognized by other courts as giving rise to at least three lessor remedies: (1) The lessor may seek an order of the court compelling surrender of the premises and rejection of the lease, *See* 4 COLLIER ON BANKRUPTCY PRACTICE GUIDE ¶ 68.05[3] p. 68–36 (1987); (2) The lessor may move for relief from the automatic stay, *Dieckhaus,* 73 B.R. at 974, *But see, In re Sweetwater,* 40 B.R. 733 (Bkrtcy. D.Utah 1984); (3) A trustee will not be allowed to assume a nonresidential real property lease unless current on lease payments, *In re Matter of Condominium Administrative Services, Inc.,* 55 B.R. 792, 799 (M.D.Fla.1985). Moreover, the Court is not suggesting by its opinion that a lessor is not entitled to an order compelling immediate payment in an appropriate case.

## CONCLUSION

As a general rule, when the debtor's estate lacks sufficient funds to pay all administrative expenses in full, administrative claimants must share pro rata in the available funds. Counsel for McCune would have this Court find a priority not indicated by the statute, its legislative history, or case authority, and not supported by any logical view of Congress' scheme of priorities under the Code.

---

**6.** However, by failing to provide specific remedies for noncompliance, Congress did not render this provision meaningless. As noted in *Dieckhaus,* there are several significant consequences for nonresidential lessors flowing from the enactment of § 365(d)(3) and (d)(4): (1) the trustee is limited to a 60–day period, which may be extended by the court for cause, in which to decide whether to assume or reject the lease; (2) the rental that comes due during the 60–day period is an allowable administrative expense without the necessity of notice and hearing, as ordinarily required by § 503(b); (3) the amount of the administrative expense claim arising in

the 60–day period is governed exclusively by the terms of the lease, whereas previously the standard was the reasonable value of the use of the property; (4) while, for cause, the court may extend the deadline for payment of rental payments that come due within the 60–day period, the deadline may not be extended beyond the 60–day period itself. *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 972 (Bkrtcy. E.D.Pa.1987). *See also, In re By–Rite Distributing, Inc.,* 47 B.R. 660, 663–66 (Bkrtcy.D.Utah 1985), *rev'd on other grounds,* 55 B.R. 740 (D.Utah 1985) (discussion and analysis of the 1984 BAFJA amendments to § 365).

We therefore hold that unpaid Section 365(d)(3) expenses do not enjoy a superpriority status over other Section 507(a)(1) administrative claims. When immediate payment of those expenses is properly sought, full payment must be made absent a showing by the trustee of "substantial doubt" that there will ultimately be sufficient funds available to pay all administrative expenses. In distinction to *IML* where there was a high probability that funds would be insufficient, in this case the trustee has simply stated that there are *currently* insufficient *liquid* assets and that an actual determination of the estate's ability to pay all administrative claims in full cannot yet be made with certainty.[7] As recognized by the *Dieckhaus* court, the failure of the trustee (or debtor in possession) to perform his statutory duties under Section 365(d)(3) has thrust the lessor into the position of an involuntary postpetition creditor. Equity demands that full payment be made to the lessor by the trustee unless "there is a substantial doubt that there will be sufficient assets for the payment of all administrative expenses in full," in which case "the Court will authorize payment of only such an amount 'as would almost certainly be allowed the applicant under all possible contingencies.'" *Id., quoting In re Coconut Grove Bayshore, Inc.,* 33 B.R. 194, 195 (Bkrtcy.S.D. Fla.1983). *See also In re American Resources Management Corp.,* 51 B.R. 713, 719 (Bkrtcy.D.Utah 1985). Based on the evidentiary record before the Court, the standard of "substantial doubt" has not been met by the trustee. Absent further evidence by the trustee to satisfy the standards set forth herein, immediate payment should be made to McCune of all rent accrued for the period of 60 days from the filing of Granada's petition for relief.

---

7. The trustee has said that he is "hopeful to be able to enlarge the estate's coffers," transcript of September 24, 1987, hearing at p. 11, and "if we are successful and can enlarge the estate coffers there might be millions of dollars hopefully available." *Id.* at p. 17.