**In re The MONTALDO CORPORATION, d/b/a Montaldo's, Debtor.**

**Bankruptcy No. 95–10416C–11G.**

United States Bankruptcy Court,
M.D. North Carolina,
Greensboro Division.

March 3, 1997.

Rayford K. Adams, III, Margaret V. Costley, Greensboro, NC, for debtor.

Deborah L. Fletcher, Charlotte, NC, for Heitman Properties of Missouri, Ltd.

## MEMORANDUM OPINION

WILLIAM L. STOCKS, Chief Judge.

This case came before the court on December 10, 1996, for hearing upon the Debtor's objection to claim no. 364 of Heitman Properties of Missouri, Ltd. in the amount of $250,-650.28. Rayford K. Adams, III and Margaret V. Costley appeared on behalf of the Debtor and Deborah L. Fletcher appeared on behalf of Heitman Properties of Missouri, Ltd. ("Heitman").

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B).

## ISSUE

The Debtor has objected to the Heitman claim on the ground that the claim is barred as a result of being filed after the claims bar date in this case and also has objected to the amount of the proof of claim filed by Heitman. However, the only matter considered on December 10, 1996, and the only matter now before the court is whether the Heitman claim is barred as a result of being late filed.

## FACTS

The Debtor filed this voluntary Chapter 11 case on February 21, 1995. For many years prior to the filing of this case, the Debtor operated several retail clothing stores. One of the stores operated by the Debtor was located in space which the Debtor leased from Heitman in a shopping mall known as Plaza Frontenac which is located in Frontenac, Missouri. However, in December of 1994, the Debtor closed its store in the Heitman facility. On January 16, 1995, approximately a month before the filing of this case, the Debtor vacated the leased premises located at Plaza Frontenac, removed its personal property from the premises and surrendered the keys to the premises to Heitman.

On March 10, 1995, a notice of commencement of case under Chapter 11 was issued in this case and was served upon creditors and other parties in interest, including Heitman. The notice was accompanied by a proof of claim and stated that the "[d]eadline to file a proof of claim is 07/06/95." The notice also contained language stating that creditors whose claims were not scheduled or whose claims were listed as disputed, contingent or unliquidated and who desired to participate in the case or share in any distribution "must file their proof of claim."

Under the terms of the lease between the Debtor and Heitman, the lease term extend-

ed through December 31, 1995. On March 22, 1995, approximately one month after the filing of the Chapter 11 case, the Debtor filed a motion to reject the lease with Heitman in which the Debtor requested that it be permitted to reject the Heitman lease and several other leases immediately. The motion to reject the Heitman lease was served by mail on Heitman. The motion to reject was scheduled for hearing on April 6, 1995. A notice of this hearing date was served upon Heitman by mail on March 24, 1995. The hearing on the Debtor's motion to reject was held on April 6, 1995, as scheduled. Heitman did not appear at the hearing. The Debtor's motion to reject the Heitman lease was granted in open court on April 6, 1995. However, no written order was entered at that time.

On December 12, 1995, after having obtained extensions of time, the Debtor filed its Plan of Liquidation. On February 2, 1996, the court confirmed Debtor's Plan of Liquidation. Thereafter, on February 29, 1996, Heitman filed its proof of claim in the amount of $250,650.28. The Debtor filed its objection to the Heitman claim on June 4, 1996.

## ANALYSIS

■ It is undisputed that the deadline for claims in this case was July 6, 1995, that Heitman received notice of the deadline for filing claims and that the Heitman proof of claim was not filed until February 29, 1996, more than seven months after the deadline. In contending that its claim nevertheless should not be barred even though filed after the deadline, Heitman has presented a number of arguments. Heitman first argues that the July 6, 1995 deadline for filing claims is not applicable to its lease rejection claim because no order of rejection was entered by the court prior to the deadline for filing claims.

### A. Was the Heitman Lease Rejected Before the Claims Bar Date?

■ Contrary to Heitman's argument, rejection of an executory contract may occur in a Chapter 11 case without the entry of an order of rejection. In that connection,

§ 365(d)(4) of the Bankruptcy Code provides as follows:

(4) Notwithstanding paragraph (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within sixty days after the date of the order for relief, or within such additional time as the court, for cause, within such sixty-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

This provision is applicable to Chapter 11 debtors in possession as well as to trustees in Chapter 7 and Chapter 11 cases. *See* 11 U.S.C. § 1107(a). It is well established that under § 365(d)(4), if the trustee or debtor in possession does not assume or reject an unexpired lease of nonresidential real property within sixty days after the date of the order for relief or file a motion for extension of time to do so, the lease is automatically deemed rejected on the date the sixty-day period expires. No order of rejection is required. *E.g., In re Duckwall–ALCO Stores, Inc.,* 150 B.R. 965, 972 (D.Kan.1993); *In re Port Angeles Waterfront Associates,* 134 B.R. 377, 380 (9th Cir. BAP 1991); *In re REPH Acquisition Co.,* 134 B.R. 194, 200 (N.D.Tex. 1991); *In re Tompkins,* 95 B.R. 722, 724 (9th Cir. BAP 1989).

Heitman argues that in the present case its lease was not deemed rejected at the end of sixty days pursuant to § 364(d)(4) because of the motion to reject which was filed by the Debtor on March 22, 1995. This argument is rejected. The Debtor surrendered the Heitman location before this Chapter 11 case was filed. Had the Debtor done nothing regarding the Heitman lease after this case was filed, the lease unquestionably would have been deemed rejected at the end of sixty days. However, such inaction would have exposed the estate to a cost of administration claim or a claim pursuant to § 365(d)(3) from Heitman for sixty days' rent. Because the Heitman location was sitting vacant and was not being used for any purpose by the Debtor, it would have been wasteful to do nothing and allow base rent of $13,457.16 and other

liabilities under the lease to accrue. Rather than throw away rent and other lease charges for premises which were unoccupied and unused, the Debtor filed its motion to reject immediately in an effort to cut off the cost of administration rent claim before the end of sixty days. In the motion, the Debtor did not seek an extension of time to assume or reject leases. Rather, the Debtor sought only to reject the Heitman lease and the other leases listed in the motion. Further, the motion made it absolutely clear that it was filed in order to reject the leases immediately. Heitman thus received actual notice of the Debtor's intention to reject its lease immediately when the motion was served on Heitman on March 22, 1995.

Even though the motion was heard on April 6, 1995, and allowed in open court, Heitman asserts that rejection of the lease did not occur on April 6, 1995, because no written order was entered at that time. Heitman argues that no rejection took place until a written order was entered on September 28, 1995, at which time the July 6, 1995 bar date already had passed. Heitman concludes that it therefore should not be bound by the bar date since its rejection claim did not arise until after the bar date had passed. In support of its position, Heitman has cited several cases in which the claims bar date was not enforced against a lease rejection claimant whose lease was not rejected until after the bar date. *E.g.*, *In re Boston Post Rd. Ltd. Partnership*, 21 F.3d 477 (2d Cir.1994), *cert. denied*, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782 (1995). In these cases, the debtors moved for extensions of time to reject or assume (rather than moving for outright rejection) and the rejection did not occur until after the bar date had passed. Such cases are readily distinguishable from the present case because, contrary to Heitman's contention, the rejection of the Heitman lease occurred well before the July 6, 1995 bar date. If the Heitman lease was not rejected when the Debtor's motion was heard and granted on April 6, 1995, the rejection occurred at the end of sixty days following the filing of this case, April 23, 1995. This result follows from the language of § 365(d)(4) under which a lease is deemed rejected if not as-

sumed or rejected within sixty days. Where a debtor files a motion to reject (and not a motion to extend time to reject or assume), and the court fails to act on the motion within sixty days, then, pursuant to § 365(d)(4), the lease is deemed rejected because the lease has been neither assumed or rejected during the sixty-day period. *In re Duckwall-ALCO Stores, Inc.*, 150 B.R. 965, 972 (D.Kan.1993). As the court in the *Duckwall* case explained:

> Under § 365(d)(4), if the trustee or debtor-in-possession does not assume or reject an unexpired lease of nonresidential real property within sixty days after the date of the order for relief (in this case, May 8, 1989), the lease is deemed rejected on the date the sixty-day period expires. Although Duckwall filed its motion for rejection of the Inland Lease, among others, on June 14, 1989, the bankruptcy court failed to act on the motion within the sixty-day limit. Therefore, the unexpired lease was deemed rejected upon the lapse of the sixty-day period from the date of the order for relief, or July 7, 1989.

150 B.R. at 972–73. *Accord, In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219–220 (9th Cir.1990) (when debtor files motion to reject lease within sixty days, lease is deemed rejected at the end of the sixty days, without the need for court approval); *Paul Harris Stores, Inc. v. Mabel L. Salter Realty Trust*, 148 B.R. 307, 310 (S.D.Ind.1992) (under § 365(d)(4) a lease is rejected by operation of law sixty days after petition filed, if not explicitly assumed or rejected within that period). As the court pointed out in *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216 (9th Cir.1990) such a result not only is consistent with the language contained in § 365(d)(4) but also serves the purpose behind the adoption of § 365(d)(4). The adoption of § 365(d)(4) grew out of Congressional concern that mall operators were facing periods of extended vacancies that would last until such time as the bankruptcy court would finally take the initiative and force debtors to make a choice whether to assume or reject the leases. *Id.* at 220 (citing 130 Cong.Rec. S8891, S8894–95 (daily ed. June 29, 1984)). Requiring court approval each

time a motion to reject is filed within sixty days of bankruptcy, contrary to the purpose behind § 365(d)(4) would invite delay, causing the extended vacancies that § 365(d)(4) was designed to prevent. *Id.* at 220. The general purpose of § 365(d)(4) is best served if, when a debtor files a motion to reject a lease within sixty days of bankruptcy and no other motion regarding the lease is filed within that period, the lease is deemed rejected at the end of the sixty days, if not actually rejected sooner. The purpose of protecting lessors from delay and uncertainty is thus served because the sixty-day deadline stands firm. *Id.* at 220. The result in the present case is that the Heitman lease was rejected at the latest on April 23, 1995, which is the sixtieth day after the filing of this case, and more than two months prior to July 6, 1995 deadline for filing claims.

B.  Is the Heitman Claim Subject to the Claims Bar Date?

■ This leaves the question of whether the Heitman lease rejection claim is subject to the July 6, 1995 deadline for filing claims, as contended by the Debtor. For the reasons that follow, the court has concluded that the Heitman claim is subject to the July 6, 1995 claims deadline which was established at the outset of this case.

■ Pursuant to § 365(g) the rejection of an executory contract in a Chapter 11 case constitutes a breach of such contract immediately before the filing of the petition in the case if such contract has not been previously assumed by the debtor or trustee, *i.e.*, the rejection gives rise to a pre-petition claim for damages recoverable as a result of the breach. Such claim is to be determined in accordance with § 502(g) which provides:

(g) A claim arising from the rejection, under section 365 of this title or under a plan under Chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Under § 502(g) the extent to which the lease rejection claim is allowable is determined pursuant to § 502(a), (b) or (c). Under subsection (a) of § 502, a lease rejection proof of claim is deemed allowed unless a party in interest objects which, of course, occurred in the present case. An objection brings into play subparagraph (b) of § 502 under which a lease rejection claim must be allowed except to the extent that any of the grounds for objection specified in subparagraph (b) are applicable to the claim. For example, a lease rejection claim may not be allowed to the extent that it exceeds the amount specified in § 502(b)(6). A lease rejection claim is subject to all of the grounds for objection set forth in § 502(b), including subparagraph (9) under which a lease rejection claim or any other claim may not be allowed to the extent that "proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of 726(a) of this title or under the Federal Rules of Bankruptcy Procedure...." Read together, the foregoing provisions of § 502 and the provisions of § 365(g) mean that a lease rejection claim must be treated as a pre-petition claim (i.e., a claim that arose before the date of the filing of the petition) which, in turn, must be timely filed in order to be allowable.

There is no requirement that a special order be entered providing a specific deadline for each lease rejection claim. Bankruptcy Rule 3003(c)(3), which is applicable in Chapter 11 cases, provides as follows:

(3) Time for Filing. The court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

■ Bankruptcy Rule 3002(c)(4), which is referred to in the above-quoted language from Bankruptcy Rule 3003, provides as follows:

(4) A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct. (Emphasis supplied).

Although the foregoing language permits the court to specify a special deadline for the filing of claims arising from the rejection of an executory contract or unexpired lease, there is no requirement that such specialized orders be entered. *See Liakas v. Creditors' Committee of Deja Vu, Inc.,* 780 F.2d 176, 178 (1st Cir.1986). In the absence of such orders, Bankruptcy Rule 3003(c)(3) is controlling and the general deadline set by the court for filing proofs of claim pursuant to Bankruptcy Rule 3003(c)(3) is applicable to lease rejection claims which are rejected prior to the expiration of that deadline. *In re Lee Way Holding Co.,* 178 B.R. 976, 984 (Bankr.S.D.Ohio 1995). Accordingly, since the Heitman lease was rejected before the claims bar date, the claims bar date is applicable to the Heitman lease rejection claim.

■ There is no merit to Heitman's argument that § 4.3 of the Plan of Liquidation established the applicable deadline for the filing of its lease rejection claim. Section 4.3 of the Plan clearly is limited to rejection claims arising out of leases and executory contracts which are rejected *under the Plan.* Since the Heitman lease was rejected long before the Plan was confirmed on February 2, 1996, it was not rejected by the Plan and is not subject to the deadline contained in the Plan.

■ Heitman also argues that the filing of the motion to reject its lease injected doubt concerning the status of the Heitman lease. There is no basis for this argument. The contents of the motion itself left no doubt regarding the status of the Heitman lease. The motion made it crystal clear that the Debtor intended to reject the Heitman lease *immediately.* This motion was served on Heitman at a time when Heitman knew that the Debtor already had vacated the leased premises and returned the keys to the premises to Heitman. The Debtor's motion, coupled with the prior abandonment by the Debtor, left no room for doubt regarding Debtor's intentions—the Debtor intended that the lease was to be rejected as soon as possible. Heitman, a sophisticated commercial landlord, could not have been confused or in doubt as to the Debtor's intentions regard-ing the abandoned premises which sat dark and empty in Frontenac, Missouri.

■ A further argument by Heitman is that the Debtor's actions in presenting the September 28, 1995, order were inconsistent with Debtor later contending that the general bar date is applicable to the Heitman claim. No inconsistency between the motion and the Debtor's contention regarding the bar date was shown. No evidence was offered as to why the Debtor submitted an order on September 28, 1995, with respect to a hearing which was held on April 6, 1995. However, by its terms, the order makes the rejection effective as of April 6, 1995, the date of the hearing. The order apparently was intended by the Debtor to limit any cost of administration claim to the period between the filing date and April 6, 1995, the date of the hearing, rather than having the COA claim include the entire sixty-day period which did not expire until April 23, 1995. In any event, the order clearly does not purport to set a deadline for the filing of Heitman's lease rejection claim. Moreover, Heitman could not have relied on the order in not filing a claim before the July 6, 1995 deadline, since the order was entered months after the deadline already had passed. Hence, the court is satisfied that the entry of the order had nothing to do with Heitman's failure to file a claim prior to the July 6, 1995 deadline for filing claims.

This is not a case in which the tardy creditor did not receive notice of the general bar date for the filing of claims, since it is undisputed that a copy of the notice containing the general bar date was served by mail on Heitman at the outset of this case. This also is not a case in which the notice of bar date was incomplete or ambiguous. To the contrary, the notice which was served upon Heitman stated very clearly and conspicuously that the deadline to file a proof of claim was July 6, 1995. Moreover, the notice also stated that creditors who desired to participate in the case or share in any distribution "must file their proof of claim." It is undisputed that Heitman received this notice shortly after this case was filed. Furthermore, when this case was filed, Heitman had a pre-petition claim totally independent of

any later rejection claim. In that regard, the Heitman proof of claim reflects that when this case was filed, Heitman had a claim of $30,490.24 consisting of rent and other amounts which came due under the lease before this case was filed on February 21, 1995. When the notice was received, Heitman was aware that the premises had been surrendered, was aware that the Debtor had breached the lease, was aware that it had a claim against the Debtor and, upon receipt of the notice, received clear and unambiguous notification that it needed to file a proof of claim prior to July 6, 1995, if it desired to share in any distribution. There is no reason whatsoever why the entire Heitman claim, including the portion of the claim for rejection damages, should not be subject to the July 6, 1995 deadline for the filing of claims in this case. Accordingly, the court concludes that Heitman was required to file its claim on or before July 6, 1995. The failure to do so bars the claim filed by Heitman unless Heitman is entitled to relief under Bankruptcy Rule 9006 based upon excusable neglect.

C.  Is Heitman Entitled to Relief Under Bankruptcy Rule 9006 Based Upon Excusable Neglect?

■■■■■■  Bankruptcy Rule 9006(b)(1) provides as follows:

> IN GENERAL.  Except as provided in paragraph (2) and paragraph (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Where, as in the present case, the request for relief under Bankruptcy 9006 is made after the expiration of the specified period, the movant is entitled to relief if the failure to act was the result of excusable neglect. The standard for determining whether "excusable neglect" exists is found in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).  In *Pioneer,* the Supreme Court established a two-prong test for determining whether to extend the time to file an untimely proof of claim based upon excusable neglect.  First, the court must determine whether the movant's failure to act constitutes neglect.  The Supreme Court gave neglect its ordinary meaning in *Pioneer* and held that:

> Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as intervening circumstances beyond the party's control.

*Pioneer,* 507 U.S. at 388, 113 S.Ct. at 1495. Once neglect has been established, the court must then determine whether the neglect was excusable.  The court in *Pioneer* stated that the determination of when neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498.  The court then stated that the following factors should be included in the inquiry:  (a) the danger of prejudice to the debtor;  (b) the length of the delay and its potential impact on judicial proceedings; (c) the reason for the delay, including whether it was within the reasonable control of the movant; and (d) whether the movant acted in good faith.  A creditor seeking to extend the bar date pursuant to Bankruptcy Rule 9006 bears the burden of proving excusable neglect by a preponderance of the evidence. *See In the Matter of Bulic,* 997 F.2d 299, 302 (7th Cir.1993); *In re Houbigant, Inc.,* 188 B.R. 347, 354 (Bankr.S.D.N.Y.1995); *In re Dartmoor Homes, Inc.,* 175 B.R. 659, 665 (Bankr.N.D.Ill.1994); *In re Specialty Equipment Companies, Inc.,* 159 B.R. 236, 239 (Bankr.N.D.Ill.1993).

■■■■■■  A logical starting point in making the "excusable neglect" inquiry required under Rule 9006 is to determine whether, in fact, there has been neglect on the part of the movant.  Neglect exists where a late

filing was caused by inadvertence, mistake or carelessness on the part of the movant or by intervening circumstances beyond the movant's control. Merely because a claim was filed late does not establish that such late filing occurred because of inadvertence, mistake, carelessness or intervening circumstances beyond the party's control. For example, a party may make a conscious decision initially not to file a proof of claim and then decide later that it wishes to do so. Such conscious decisions not to file a claim may be made where a party at first believes that no dividend will be paid in the case or where there is a tactical reason for not filing a claim until after the bar date has passed. In such a situation, there simply is no neglect involved and relief based upon the concept of excusable neglect is not appropriate. *See Agribank v. Green,* 188 B.R. 982 (C.D.Ill.1995); *In re Bicoastal Corp.,* 176 B.R. 966 (Bankr.M.D.Fla.1994); *In re Mother Hubbard, Inc.,* 152 B.R. 189 (Bankr. W.D.Mich.1993).

In the present case, although the burden was on Heitman to prove excusable neglect, no evidence was offered regarding the circumstances surrounding the preparation and filing of the Heitman claim. There was no evidence as to the identity of the persons preparing and filing the claim nor any evidence tending to explain why the claim was not filed until February 29, 1996, even though notice of the bar date had been received by Heitman shortly after this case was filed in February of 1995. In the absence of such evidence, there was not a sufficient basis for the court to find that the claim was filed late as a result of neglect. Moreover, given the absence of supporting evidence, it also is clear that Heitman failed to show any excuse for not filing the claim in a timely fashion or that the failure to file the claim before the bar date was beyond the control of Heitman. To the extent that Heitman contends that it had insufficient time to file the claim before the bar date, such contention is rejected. As indicated earlier in this opinion, it is undisputed that Heitman received notice of the claims bar date shortly after this case was filed and had ample opportunity to file a proof of claim before the bar date passed.

The length of the delay in filing the claim, the impact on the judicial process and prejudice to other parties in interest also weigh against Heitman, even if the court assumes that Heitman has acted in good faith. The Heitman claim was filed more that seven months after the claims bar date. By the time the claim was filed, the Plan in this case already had been confirmed. The Plan is a liquidation plan under which the estate proceeds are being distributed prorata to those creditors who filed timely claims. The allowance of the very substantial claim filed by Heitman would prejudice those creditors who filed timely claims because it will reduce significantly the amount that such creditors receive under the Plan. This circumstance weighs against extending the time for the filing of the Heitman claim in this case, particularly in the absence of any evidence explaining why the claim was filed late. *See In re Lee Way Holding Co.,* 178 B.R. 976, 986 (Bankr.S.D.Ohio 1995) ("Creditors filing timely claims are entitled to enjoy an increased dividend, not settle for a lower dividend based on [the tardy claimant] suddenly springing to action."); *In re R.H. Macy & Co., Inc.,* 161 B.R. 355, 361 (Bankr.S.D.N.Y. 1993) ("Extending the bar date to allow any of the Movants to file a proof of claim could result in the depletion of assets which would otherwise be available for distribution to creditors who have filed timely proofs of claim. This factor therefore weighs in favor of the Debtor."); *In re Rose's Stores, Inc.,* 165 B.R. 410, 412 (Bankr.E.D.N.C.1994) ("the debtor is self-insured up to $250,000.00, and the allowance of the claim would directly affect the debts owed by the estate and prejudice other creditors who timely filed claims.").

Additionally, as a result of Heitman's delay, the claim was received by the Debtor after the Debtor had ceased operations, closed its remaining stores and corporate office and terminated its remaining employees. Hence, as a result of Heitman's delay in filing the claim, if the claim were now accepted, the Debtor would be hampered in locating former employees and information needed in order to investigate and effectively defend against the Heitman claim, the amount of which is in dispute. *See In re*

*Bicoastal Corp.*, 176 B.R. 966 (Bankr. M.D.Fla.1994). This poses a distinct risk of prejudice to the Debtor and the creditors who filed timely claims.

Finally, regarding the impact of allowing the late filed claim on the judicial process, it is important to recognize that the claims bar date in a Chapter 11 case is not merely a procedural gauntlet. It serves a useful and important purpose because it allows parties in interest to determine the identity of those making claims against the estate and the amount of those claims. Adherence to the bar date furthers this important policy. *See In re R.H. Macy & Co., Inc.*, 161 B.R. 355 (Bankr.S.D.N.Y.1993). However, such purpose would be undermined to a significant degree if bankruptcy courts were to permit late filed claims where there has been no showing of why the claims was filed late nor any excuse offered for the late filing. To treat such late claims the same as claims which are timely filed would undermine the effectiveness of the bar date and have a negative impact in Chapter 11 cases whether such cases involve liquidation plans or plans involving the reorganization of the debtor.

Having considered all of the foregoing factors and having weighed the equities which favor allowing the late filing of the claim against the equities which favor sustaining the objection, the court finds and concludes that there has been no showing of excusable neglect in this case and further concludes that the bar date should not be extended to permit the late filing of the Heitman claim.

## CONCLUSION

For the reasons stated in this memorandum opinion, an order will be entered contemporaneously herewith sustaining the Debtor's objection to Heitman's proof of claim and disallowing the proof of claim as filed by Heitman.